UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANTON HARRY MCCAIN, II,<br><br>               Plaintiff,<br><br>   v.<br><br>DEPARTMENT OF CORRECTIONS, et al.,<br><br>               Defendant. | CASE NO. 3:20-cv-05650-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Stanton Harry McCain, II, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is a prisoner currently confined at Monroe Correctional Center – Twin Rivers Unit (MCC-TRU). Plaintiff's complaint names as Defendants Corrections Officer Naima Neghmouche, and PREA (Prison Rape Elimination Act) Specialist Michelle Henderling.[1] *Id*. Currently pending before the Court is Defendants Neghmouche's and Henderling's motion for summary judgment seeking dismissal of Plaintiff's claims against them. Dkt. 27. Plaintiff opposes the motion and moves to strike one of the declarations and evidence submitted in support of Defendants' motion for summary judgment. *See* Dkts. 36, 38, 42, 47, 53, 54, 66, 70.

---

[1] The Department of Corrections and Stephen Sinclair were originally named as Defendants in the complaint but were previously dismissed from the action. *See* Dkts. 22, 26.

REPORT AND RECOMMENDATION - 1

For the reasons below, the Court recommends that Plaintiff's request to strike (Dkt. 38) be DENIED, that Defendants' motion for summary judgment (Dkt. 27) be GRANTED and the claims against Defendants Neghmouche and Henderling be dismissed with prejudice and the case be closed.

## STATEMENT OF RELEVANT FACTS

On January 5, 2020, Plaintiff filed a grievance that identified itself as a PREA complaint. Dkt. 5, at 3-4. Pursuant to DOC policy, the complaint was forwarded to the MCC PREA unit. Dkt. 5, at 18. PREA compliance specialist Michelle Henderling sent Plaintiff a letter informing him that an investigation would be opened. Dkt. 5, at 19. The investigation was assigned to Lieutenant Kenneth Hellman to investigate. Dkt. 28-1, at 20. The investigation was completed and the complaint determined to be unfounded in August 2020, after the events giving rise to the instant lawsuit. *Id.*, at 34-36.

On April 21, 2020, Defendant Neghmouche filed a serious infraction report stating:

> On 04/14/2020, […] I entered Tier 1 to remove key lock for cell 119. As I approached 119 cell door Offender McCain, Stanton […] sitting in his wheelchair facing his cell door 118, he was positioned in a way that prevented me from being able to remove the key lock for cell 119. I asked Offender McCain "please move so I can do my job", he refused to move stating "you can still do it from here". I informed Offender McCain that he was refusing directive. As this was happening while I had to remove key locks for multiple offenders, plus It was mainline. I notified Sgt. Spoo. When Sgt. Spoo walked in the tier Offender McCain was in his cell and as soon as he opened his cell door he started shouting at me and talking about previous PREA complaints. Sgt. Spoo ended the conversation and directed Offender McCain to return to his cell and await mainline.

Dkt. 28-1, at 12. The serious infraction report stated that Plaintiff had violated WAC 509, refusing a direct order by any staff member to proceed to or disperse from a particular area. *Id.*

An infraction hearing was held on May 4, 2020, by a non-Defendant disciplinary hearings officer. Dkt. 18-1, Ex. 5. Plaintiff did not attend but did submit statements. Dkt. 29-1,

REPORT AND RECOMMENDATION - 2

Exhibit 4; Dkt. 28-1, Ex. 4. The disciplinary hearings officer reviewed a surveillance video as well as the witness statements and found Plaintiff guilty. Dkt. 29-1, Ex. 4; Dkt. 28-1, Ex. 5. Plaintiff was sanctioned to twenty days of cell confinement and twenty days loss of personal property and store. Dkt. 5, at 26. Plaintiff appealed the infraction. *Id.*, at 27-28. The infraction was reviewed by a non-Defendant associate superintendent and was upheld. Dkt. 28-1, Ex. 6.

## PLAINTIFF'S ALLEGATIONS

In his complaint, Plaintiff alleges Defendant Neghmouche retaliated against him for filing a PREA complaint against her. Dkt. 5. Specifically, Plaintiff claims on January 5, 2020, he filed a PREA complaint against defendant Neghmouche alleging that on January 4, 2020, she intentionally shined her flashlight and continuously stared at him while he was using the toilet in his cell, despite his requests for privacy. Dkt. 5, at 12. Plaintiff alleges that on April 21, 2020, Defendant Neghmouche filed the Major Infraction WAC 509 report falsely alleging that on April 14, 2020, Plaintiff had disobeyed her multiple direct orders to "move out of her way."[2] *Id.*, at 14-15. Plaintiff alleges Defendant Neghmouche filed the infraction report in retaliation for Plaintiff's PREA complaint. *Id.*

Plaintiff claims he did not disobey a direct order from Defendant Neghmouche. *Id.* Plaintiff alleges that on April 14, 2020, his assigned therapy aide Justin Jennings pushed him back from the kitchen and parked his wheelchair directly in front of his cell door. *Id.* Plaintiff indicates that he saw his neighbor Barry Seymore approaching from about 10 feet away without his helper and that Mr. Jennings went to help Mr. Seymore the last few feet. Plaintiff alleges

---

[2] The Court notes that while Plaintiff provides information regarding other interactions with Defendant Neghmouche, including that he believed she at some point deliberately allowing the cell door to close on his injured foot, he does not allege these interactions are the basis for the specific retaliation claim presented in his complaint which relates to his infraction. Dkt. 5, at 13.

REPORT AND RECOMMENDATION - 3

defendant Neghmouche stepped between himself and Mr. Jennings and Mr. Seymore and was standing a few inches next to Plaintiff on his right side, "trapping" him in between a five foot laundry bin on his left side and his cell door and that due to his limited abilities he was forced to wait for them to open up the way. *Id.* Plaintiff further alleges,

> [Defendant Neghmouche] was simultaneously telling Seymore to stay a little back so she could take the celldoor lock plug out of his celldoor lock […] the security video will show that I was slightly twisted in my W/C so I could see Seymore and my T/A and that I was speaking to Seymore asking him if he had his key…Seymore said "yes" but that she [Defendant Neghmouche] had to unplug his celldoor lock…
> Remembering that prior to this day [Defendant Neghmouche] had been instructed by unit Sgt Cannon and PREA specialist that she was not to interact w/ me and not to be on the tier w/out another staff/custody officer present, none was…[Defendant Neghmouche] then leaned forward looking at Seymore's doorlock, she uprighted, turned and began leaving, Seymore began calling to [Defendant Neghmouche] asking why she had not unplugged his door lock, even my T/A (Jennings) tried speaking to N/N, but, she just kept her path, leaving the tier to the unit Sgt' office (a temp/relief Sgt) Sgt Spoo (as) I wasn't so blocked from opening my cell door I opened and entered my cell closing my door…the security video captured all the above…
> [Defendant Neghmouche] misinformed Sgt. Spoo, telling him that she had given me multiple directive' to me, telling me to 'move out of her way' and that I had refused telling her "No I will not", and that we engaged in a back and forth …
> A few minutes later [Defendant Neghmouche] returned with Sgt. Spoo they opened my cell door, N/N began speaking very loudly "Mr. McCain you need to know that when I am giving you a direct instruction, you have to listen to me…" at that point I looked at the Sgt and I stated "hey searge, I don't know why she is yelling at me, I don't think she is even suppose to be interacting w/me as I have an active PREA against her", and the Sgt Spoo loudly and disrespectfully stated "I don't care about any of that save it for your infraction hearing" and they closed my door and left…or so I thought for as I was about to roll back from my cell door, I was still facing my cell door from the inside about to roll backwards…
> The security video also captured that when my cell door closed [Defendant Neghmouche] stood right in front of my cell door, I could see her in my cell door window and she misinformed Sgt. Spoo stating. "This is where we have to stand to be able to take the lock plug out of the door lock…", pointing at Seymores lock …all lies…

Dkt. 5, at 14-15. Plaintiff indicates a hearing was conducted and he was found "guilty" and sanctioned to cell confinement, loss of canteen and loss of personal property. *Id.*, at 16.

With respect to PREA Compliance Specialist Defendant Henderling, Plaintiff appears to take issue with an April 16, 2020, letter issued in the context of his PREA complaint investigation indicating that Plaintiff's allegations had been reviewed by Superintendent Jackson

REPORT AND RECOMMENDATION - 4

who determined "the alleged statements did not meet the definition of retaliation. Therefore, a formal PREA investigation will not be conducted[.]'" Dkt. 5, at 16.

As relief, Plaintiff requests only injunctive relief in the form of the removal of the 509 major infraction from his record because, he alleges, the 509 major infraction has the potential to deny him release from prison. *Id.*, at 9.

Defendants Neghmouche and Henderling now move for summary judgment dismissing Plaintiff's claims against them. Dkt. 27. Plaintiff opposes the motion and moves to strike one of the declarations and evidence submitted in support of Defendants' motion for summary judgment. Dkts. 36, 38, 42, 47, 53, 54, 66, 70.

## DISCUSSION

### A. Plaintiff's Request to Strike

In his response to Defendants' motion for summary judgment Plaintiff asks the Court to strike the declaration of Dianna Rule and documents attached thereto. Dkt. 38, at 5. However, Plaintiff fails to provide a legal basis for striking the declaration or documents. Although Plaintiff disputes the contents of some of the documents and claims they are inaccurate in some ways his allegations fail to demonstrate a basis for striking the documents from the record. Accordingly, Plaintiff's request to strike (Dkt. 38) should be denied.

### B. Defendants' Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

REPORT AND RECOMMENDATION - 5

> declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

The party moving for summary judgment has the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is "entitled to a judgment as a matter of law" [where] the nonmoving party has failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[T]he burden on the moving party may be discharged

by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*, at 325.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477 U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

**A.     Retaliation**

Defendants Henderling and Neghmouche argue there is an absence of evidence to support Plaintiff's claims of retaliation and that, therefore, no genuine issue of material fact remains, and summary judgment is appropriate. Dkt. 27.

To prevail on a retaliation claim, a plaintiff must allege and prove the defendant retaliated against him for exercising a constitutional right and the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected

REPORT AND RECOMMENDATION - 7

under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). In order to show "retaliatory motive," a plaintiff must show that her protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted). "Mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

### 1.   Defendant Henderling

With respect to PREA Compliance Specialist Defendant Henderling, Plaintiff appears to take issue with an April 16, 2020, letter issued in the context of the PREA complaint investigation, indicating that Plaintiff's allegations had been reviewed by Superintendent Jackson who determined "the alleged statements did not meet the definition of retaliation. Therefore, a formal PREA investigation will not be conducted[.]'" Dkt. 5, at 30.

Plaintiff fails to explain how this letter, issued in the context of his PREA complaint investigation, amounts to an adverse action. Furthermore, the letter, while authored by Defendant Henderling, merely communicates the determination of Superintendent Jackson who is not named as a defendant in this action. Based on the evidence, the Court cannot conclude that such a letter, conveying the determination of the Superintendent in the context of a PREA investigation would deter an individual of ordinary firmness from engaging in protected activity. *See Rhodes*, 408 F.3d at 568 ("[ (T]he proper First Amendment inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment

REPORT AND RECOMMENDATION - 8

activities."). Furthermore, there is no evidence that Defendant Henderling's handling of Plaintiff's PREA complaint was improper much less the product of a retaliatory motive. To the extent Plaintiff's allegations against Defendant Henderling can even be construed to allege her actions were retaliatory, his allegation is at best merely speculation. Finally, there is no evidence Defendant Henderling's actions did not serve legitimate penological interests. Rather, the evidence shows that Defendant Henderling merely communicated the determination by Superintendent Jackson that Plaintiff's allegations did not meet the definition of PREA retaliation. Accordingly, the Court recommends the motion be granted as to Plaintiff's retaliation claim against Defendant Henderling.

### 2. Defendant Neghmouche

With respect to Defendant Neghmouche, Plaintiff has not provided sufficient evidence to support a causal connection between the alleged protected conduct and the adverse action. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (to state a retaliation claim, "the plaintiff must allege a causal connection between the adverse action and the protected conduct"). Rather, Plaintiff provides mere speculation that Defendant Neghmouche retaliated against him. *See* Dkt. 7; Dkt. 45. Plaintiff alleges Defendant Neghmouche issued a false infraction report against Plaintiff in mid-April 2020 because he had filed a PREA complaint against her, several months earlier, in early January 2020. *See* Dkt. 7. However, there is insufficient evidence, beyond Plaintiff's conclusory allegation, that Defendant issued the infraction in retaliation for Plaintiff's filing a PREA complaint over three months prior.[3]

---

[3] The Court notes that while Plaintiff provides information regarding other interactions with Defendant Neghmouche he does not raise separate retaliation claims in this complaint with respect to these interactions or present sufficient evidence, beyond speculation, that these interactions were the product of a retaliatory motive on the part of Defendant Neghmouche.

REPORT AND RECOMMENDATION - 9

There is no direct evidence that Defendant Neghmouche wrote the infraction report because of Plaintiff's PREA complaint. Furthermore, although in some cases timing of an adverse action can be circumstantial evidence of retaliatory motive, generally timing alone is not sufficient to support the inference of retaliatory motive. *See Pratt*, 65 F.3d at 808 (concluding, while the timing of adverse actions can be circumstantial evidence to establish a retaliatory motive, timing alone did not "support the inference" of retaliatory motive). Here, the timing of the infraction report, issued more than three months after the PREA complaint, does not itself support an inference of retaliatory motive. Rather, the fact that several months elapsed between the PREA complaint and the alleged retaliatory infraction tends to undermine Plaintiff's contention that the infraction report was motivated by retaliation.

Plaintiff argues in response to the motion that he filed a statement alleging Defendant Neghmouche's actions on April 14, 2020 were retaliatory on April 14, 2020, and that Defendant Neghmouche's actual infraction report was not filed until April 21, 2021. *See* Dkt. 38, at 7; Dkt. 42, at 6; Dkt. 28-1, Ex. 4. Plaintiff also refers to a grievance he filed on April 20, 2021, alleging that, on April 18, 2020, Defendant Neghmouche put paper under his cell door despite him asking her not to do so as he was in a wheelchair and had difficulty reaching the paper. Dkt. 42, at 6; Dkt. 5, at 29. However, Plaintiff's own April 14, 2020, statement reflects that he had already been informed and was aware that he was being infracted for the April 14, 2020 incident. Dkt. 28-1, at 8. Defendants also provide an email from Sgt. Spoo dated April 15, 2020, indicating that the infraction process was already underway at that time. Dkt. 28-1, at 29. Thus, the fact that the actual infraction report was not filed until April 21, 2021, does not support an inference that Plaintiff was infracted in retaliation for the April 14, 2020 complaint or the April 20, 2021

REPORT AND RECOMMENDATION - 10

grievance.[4] The Court also notes there is no evidence Defendant Neghmouche was personally even aware that Plaintiff had filed the April 14, 2020, statement or that she was aware of the April 20, 2021, grievance which was not received by the non-Defendant grievance coordinator until April 21, 2021. *Id.*

Therefore, the record shows the absence of a genuine issue of material fact remaining regarding Plaintiff's First Amendment retaliation claim. *See California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment.); *Barstad v. Dep't. of Corrections*, 2015 WL 1867082, at *26-27 (W.D. Wash. April 23, 2015) (finding summary judgment in favor of the defendant where the prisoner plaintiff failed to present admissible evidence showing the defendant issued infractions based on a motivation to retaliate).

Furthermore, even if Plaintiff could establish a retaliation claim against Defendant Neghmouche, he fails to connect his request for relief with that claim. Specifically, the only relief Plaintiff seeks in his complaint is the expungement of the disciplinary infraction from his record. Dkt. 5. But the imposition of the disciplinary infraction itself was the result of an intervening process - the disciplinary hearing and guilty finding. Although Plaintiff claims Defendant Neghmouche lied in her infraction report, Plaintiff does not identify any constitutional infirmity in the disciplinary hearing process leading to the ultimate imposition of the infraction, nor does he name the hearing officer or any other individual involved in the disciplinary hearing process or the

---

[4] The Court also notes that to the extent Plaintiff argues in his response to Defendants' motion that he was infracted in retaliation for his April 14, 2021, statement or complaint, or April 20, 2021 grievance, this appears to be a different allegation than that raised in his complaint which alleges the infraction was filed in retaliation for his initial PREA complaint.

REPORT AND RECOMMENDATION - 11

ultimate finding of guilt as a defendant.[5] As such, even if Plaintiff could establish a retaliation claim against Defendant Neghmouche, it does not appear he can establish he is entitled to the only relief he requests – expungement of the disciplinary infraction.

Accordingly, the Court recommends the Defendants' motion (Dkt. 27) be granted as to Plaintiff's retaliation claim against Defendant Neghmouche.[6]

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's request to strike (Dkt. 38) be DENIED and that Defendants' motion for summary judgment (Dkt. 27) be GRANTED and the claims against Defendants Neghmouche and Henderling be dismissed with prejudice and the case be closed.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 1, 2021.** The Clerk should note the matter for **October 8, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

---

[5] The Court notes that in his responses to Defendants' motion for summary judgment Plaintiff presents some arguments pertaining to the disciplinary hearing process but he does not raise these issues in his complaint much less present them as constitutional challenges or claims.

[6] The Court notes that Defendants also submitted a copy of the surveillance video of the events giving rise to Plaintiff's claim. Dkt. 28-1, Ex. 7. The video does appear to the Court to show some kind of interaction between Plaintiff and Defendant Neghmouche, which Plaintiff denies occurred. However, as Defendants acknowledge, because the video itself lacks audio and Defendant Neghmouche is wearing a mask, it is not definitive in terms of establishing the exact nature of the interaction and what was said by whom. Dkt. 27, at 4. However, as discussed above, because Plaintiff fails to show a causal connection between any alleged adverse action and his PREA complaint, and fails to challenge the constitutionality of the disciplinary hearing itself, further discussion of the video is not necessary to the resolution of the motion.

REPORT AND RECOMMENDATION - 12

after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **10** pages. The failure to timely object may affect the right to appeal.

DATED this 10th day of September, 2021.

/s/ Brian A. Tsuchida
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13